UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QUALITY TRUCK & TRAILER REPAIR, INC., and ANDRZEJ CZUPTA, <br><br> Plaintiffs, <br><br> v. <br><br> JEH JOHNSON[1], Secretary of the Department of Homeland Security, ALEJANDRO MAYORKAS, Director, United States Citizenship and Immigration Services; ERIC H. HOLDER, JR., Attorney General of the United States. <br><br> Defendants. | Case No. 13-cv-05527 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Quality Truck & Trailer Repair, Inc. ("Quality Truck") filed a Complaint seeking review of the Administrative Appeals Office ("AAO") denial of its Form I-140 visa petition to classify its employee-beneficiary Andrzej Czupta for permanent employment-based status. Defendants filed a motion for summary judgment [19] and Quality Truck submitted a cross-motion for summary judgment in response. For the reasons stated herein, this Court grants defendants' motion for summary judgment and denies Quality Truck's motion.

**Background**

The material facts are not in dispute. Plaintiff, Quality Truck, is a truck and trailer repair business. On April 30, 2001, Quality Truck filed an application for Alien Employment Certification with the Department of Labor on behalf of Andrzej Czupta, as a mechanic specialist. (Dkt. #23,

---

[1] Jeh Johnson was sworn in as Secretary of Homeland Security on December 23, 2013, and is substituted for Janet Napolitano as a defendant pursuant to Federal Rule of Civil Procedure 25(d).

1

Certified Administrative Record ("CAR") at 557-60). April 30, 2001, is Czupta's priority date with a proffered wage of $47,424 annually. *Id.* The Labor Department reviewed the application, certifying the requirements of the job and that employment of such aliens will not adversely affect the wages and working conditions of similarly employed workers in the U.S. (Dkt. #21, Def.'s Opening Br. at 4). The Labor Department approved Quality Truck's application for Alien Employment Certification on November 28, 2006. (CAR at 561).

On January 7, 2008, Quality Truck filed a Form I-140 visa petition with the United States Citizenship and Immigration Services ("USCIS") requesting classification of Czupta as an immigrant seeking employment-based immigration status. *Id.* at 554. On July 22, 2009, USCIS denied the petition after finding Quality Truck had not made a bona fide job offer. *Id.* at 549-51. On August 21, 2009, Quality Truck moved USCIS to reopen and reconsider the decision. USCIS granted Quality Truck's motion to reopen and reconsider on September 28, 2009. *Id.* at 528. After reviewing the materials Quality Truck submitted in support of its motion, USCIS issued a decision that same day confirming its decision of July 22, 2009.

On October 27, 2009, Quality Truck appealed USCIS' denial of its petition in the Administrative Appeals Office. *Id.* at 522. On December 26, 2012, the AAO issued a Notice of Intent to Deny and Request for Evidence. *Id.* at 487. Quality Truck submitted additional information in support of its petition. *Id.* at 112-486. On May 29, 2009, the AAO dismissed Quality Truck's appeal of USCIS' decision and affirmed the denial, invalidating the labor certification on which the petition was based. *Id.* at 97.

September 20, 2013, the AAO issued a Notice of Reopening on Service Motion and Intent to Deny, reopening the petition application on its own motion for *de novo* review. The AAO stated that it based its intent to deny on the following: (1) failure to show the job offer is bona fide; (2) failure to show the beneficiary has the requisite training and experience to show that he is qualified for the position as certified in the Labor Certification application submitted to the Labor

Department; and (3) the failure to show that Quality Truck has the ability to pay the wage proffered to beneficiary in the Labor Certification application. *Id.* at 93-94. The AAO also requested further evidence from Quality Truck to support the petition, including a list of each beneficiary for whom Quality Truck has filed a Form I-140 immigrant worker petition, the priority date and receipt number for each beneficiary listed; exact dates of the beneficiaries' employment, indication of whether each listed beneficiaries' petition is active or inactive with explanation of any inactive petitions, the proffered wage for each listed beneficiary, the actual wage paid to each from April 30, 2001, to the present, and W-2 or 1099 Forms issued to each beneficiary from April 30, 2001, to the present. *Id.* at 94-95. Quality Truck responded to the request on October 18, 2013.

USCIS records indicate that Quality Truck has filed immigrant worker visa petitions on behalf of eight beneficiaries. Aside from Czupta, the other seven beneficiaries are JG, PJ, JS, AIK, RJ, AP, and FP. Quality Truck did not provide the W-2s for any of these other beneficiaries. *Id.* at 41-42. The evidence presented by Quality Truck in support of its petition establishes that between 2001 and 2012, Quality Truck paid Czupta anywhere between $2,798.60 and $21,174 below the proffered wage at issue here of $47,424. *Id.* at 43-44. In 2007, according to Quality Truck's records, it paid Czupta $41,600 ($5,824 below the proffered wage of $47,424). In 2008, according to Quality Truck's records, it paid Czupta $41,600 ($5,824 below the proffered wage of $47,424). In 2009, according to Quality Truck's records, it paid Czupta $43,648.40 ($3,772.60 below the proffered wage of $47,424). In 2010, according to Quality Truck's records, it paid Czupta $44,625.40 ($2,798.60 below the proffered wage of $47,424). In 2011, according to Quality Truck's records, it paid Czupta $44,586.10 ($2,837.90 below the proffered wage of $47,424). Quality Truck submitted tax returns to USCIS demonstrating its net income for the years 2001-2011. For each of the years 2007-2011 its net income was $2,352; -$5,269; -$130,167; -$11,588; and -$8,513, respectively. Quality Truck's records also show that its net current assets for each of the years 2007, 2010-2011, were $754; -$13,794; -$18,589. Each of these figures is less than $47,424.

Quality Truck's submissions to USCIS list a technical school in Poland, "Group of Trade Schools of Zakopane" to support Czupta's training requirements, but on the ETA 750 Form submitted to the Department of Labor this school is not listed as an entity where Czupta received training. Quality Truck's submissions also show different dates on which Czupta began employment with Quality Truck: the Form G-325A biographic information signed by Czupta under penalty of perjury on October 9, 2007, states that Czupta began working for Quality Truck in February 1998. *Id.* at 10, 49. The ETA 750 submitted to the Department of Labor states that Czupta began working for Quality Truck in 2001. *Id.* at 50, 560. One of the documents that Quality Truck submitted to USCIS was a work certificate with a stamp from Mechanika Pojazdowa, but the work certificate lacks a title for the signatory, Jan Domagala, and it fails to list Czupta's duties while he worked at Mechanika Pojazdowa. A letter submitted in support also does not list Czupta's duties. *Id.* at 542.

On November 22, 2013, the AAO dismissed Quality Truck's appeal and affirmed the denial of the petition. The AAO based its decision on Quality Truck's failure to show the job offer is bona fide, the failure to show that it has the ability to pay the wage proffered to Czupta in the Labor Certification Application, and the failure to show that Czupta has the requisite training and employment experience to qualify for the position as certified in the Department of Labor certification application. *Id.* at 48-50.

**Legal Standard**

While the motions before the Court are styled as motions for summary judgment, the Court is really asked to review the final administrative decision of the AAO under the Administrative Procedure Act ("APA"). A court reviewing an administrative agency's decision may set aside agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Cheeku, Inc. v. Napolitano*, 13-CV-1600, 2014 WL 321699 at 2 (N.D. Ill. Jan. 28, 2014); *see also Abraham Lincoln Memorial Hosp. v. Sebelius,* 698 F.3d 536, 547 (7th Cir. 2012). "Review under the APA is deferential and a court must not 'substitute its

4

judgment for that of the agency.'" *Taco Especial v. Napolitano,* 696 F. Supp. 2d 873, 877 (E.D. Mich. 2010) (quoting *Motor Vehicle Manufacturer's Association v. State Farm Mutual Auto Insurance Co.,* 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)). The Court will affirm an agency decision that rests on several independent grounds if any of those grounds validly supports the result. *Carnegie Natural Gas Co. v. FERC*, 968 F.2d 1291, 1294 (D.C. Cir. 1992); *see generally NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 767 n.6 (1969) (plurality opinion).

**Discussion**

The process of gaining permanent employment for immigrant aliens begins with the Application for Alien Employment ETA-750 Form submitted to the Department of Labor for certification. The application must state the actual minimum requirements of the job opportunity without listing unduly restrictive prerequisites for the job, demonstrate the job opportunity has been and is "clearly open" to any qualified U.S. worker. *See* 20 C.F.R. § 656.10(c)(8); *see also* 20 C.F.R. § 656.17. The Department of Labor must certify: (1) there are no qualified, able and willing U.S. workers available to fill the employer's job opportunity, (2) the requirements of the job, including required training and experience, and (3) that the employment of such aliens will not adversely affect the wages and working conditions of similarly employed workers in the United States. 8 U.S.C. § 1182(a)(5)(A)(i)(I). Once an employer obtains approval of a Form ETA-750, it can petition USCIS to classify a specific alien beneficiary as an employment-based immigrant using a Form I-140. *See* 8 C.F.R. § 204.5(c). The employer must show that the prospective employee meets the minimum job requirements specified in the Form ETA-750 and that the employer has the ability to pay the wage specified in that form. *See* 8 C.F.R. § 204.5(g); *see* 8 C.F.R. § 204.5 (1)(3)(ii)(B). If USCIS denies the petition, the employer may appeal to the Administrative Appeals Office. The AAO reviews the denial of visa petitions *de novo* and may address issues not raised in the initial application. *Taco Especial* , 696 F. Supp. 2d at 879; *see, e.g., Soltane v. United States Department of Justice*, 381 F.3d 143, 145-46 (3d Cir. 2004).

Quality Truck, as the visa applicant, has the burden to establish that the beneficiary, Andrzej Czupta, is eligible to receive a visa. 8 U.S.C. § 1361; *see also Amglo Kemlite Labs v. BCIS*, No. 07 C 945, 2008 U.S. Dist. LEXIS 18117, 2008 WL 687223 at *3 (N.D. Ill. Mar. 10, 2008). Defendants argue that Quality Truck did not provide sufficient evidence to show that it could pay Czupta the proffered wage and that Czupta had the necessary training and experience to qualify for the position as certified by the Department of Labor. Quality Truck argues that the AAO decision was arbitrary and capricious because it should have employed the *Sonegawa* reasoning to find that Quality Truck had the ability to pay Czupta the proffered wage and that the AAO based its decision on an improper finding that Quality Truck had not made a bona fide job offer. For review of the AAO decision, this Court is confined to the evidence in the administrative record. *Harmon v. United States*, 2006 U.S. Dist. LEXIS 90746, 4-6 (N.D. Ill. Dec. 15, 2006).

*1. Quality Truck's Ability to Pay the Proffered Wage*

Quality Truck must demonstrate the ability to pay the proffered wage beginning at the time the ETA-750 was approved (April 30, 2001) and continuing until the petition to hire an alien is approved. 8 C.F.R. § 204.5(g)(2). USCIS has established three primary methods by which an employer can conclusively establish the ability to pay the proffered wage. *Taco Especial,* 696 F. Supp. 2d at 878. First, an employer can show that he is already employing the alien beneficiary at a wage equal to that specified in the Department of Labor certification form ($47,424 annually). *See id* at 878-9. Second, Quality Truck can show that its yearly net income exceeds $47,424. *Id.* Finally, Quality Truck can show that its net current assets exceed $47,424. *Id.* Even if an employer fails to meet any of the three criteria, USCIS has the discretion to consider any other evidence provided by the petitioner and may use it to find that an employer has the ability to pay the proffered wage. *Id.*

Here, the AAO determined, and Quality Truck concedes, that it had not demonstrated its ability to pay the proffered wage using one of the three methods described above. Instead, Quality Truck argues that the AAO should have considered its overall financial circumstances, which

demonstrate an ability to pay the proffered wage. Quality Truck relies on *In re matter of Sonegawa*, 12 I&N Dec. 612 (BIA Reg'l Comm'r 1967), in support of this argument. *Sonegawa* however does not stand for the proposition that the AAO must consider the overall financial circumstances of an employer. In *Sonegawa*, the Board of Immigration Appeals found that the small profit in the relevant year of 1966 was due to unique conditions that were not likely to be repeated and found that the employer could show a reasonable expectation of future profits based on a totality of the circumstances.

Quality Truck asserts that it submitted materials showing the substantiality of its business could support a finding that it is able to pay Czupta the $47,424 proffered wage. Quality Truck highlights that it has been in business for 24 years, maintained between 39 and 40 employees during the relevant period, that it is recognized as a business leader in the community, and, citing the CAR generally, that it "had revenue in the millions of dollars throughout the period examined." (Dkt. #26, Pl.'s Motion for Summary Judgment and Response Br. at 7). Based on this evidence, Quality Truck claims a reasonable finding would have been that it could make up the difference between Czupta's pay and the proffered wage. *Id.* Quality Truck's argument is unpersuasive in light of its concession that it could not show ability to pay under any of the metrics employed by the AAO and its vague assertion without pointing to specific documentation that it had revenue in the millions of dollars. Further, this Court finds that *Sonegawa* is inapplicable. "Under the reasoning of *Sonegawa* an employer who has experienced and recovered from an isolated period of economic duress can rely on its renewed profitability in demonstrating its ability to pay a proffered wage." *Taco Especial*, 696 F. Supp. 2d at 879. Quality Truck did not present any evidence to USCIS or the AAO that it had suffered and recovered from an isolated period of economic trouble. The AAO also considered and rejected the evidence that Quality Truck refers to here. Accordingly, this Court finds that the AAO acted in a rational manner denying the petition on Quality Truck's failure to show its ability to pay Czupta the proffered wage of $47,424.

7

*2. Czupta's Experience and Training*

While this Court need not review the AAO's decision to deny the visa petition on the independent basis that Quality Truck failed to establish that the beneficiary Czupta had the requisite training and experience, this Court nevertheless finds that the AAO's decision on this basis was not arbitrary and capricious. The AAO's denial of the visa petition on the independent basis that Quality Truck failed to establish that Czupta possessed the required two years of employment experience in the job offered of mechanic specialist and one year of training in auto mechanics as set forth in the Form ETA-750 is rational and based on the record evidence before it.

The AAO considered Quality Truck's submissions on the ETA-750 Form and ETA-750B Form. On those forms, Czupta states that he is qualified for the position based on a certificate in mechanical training from Mechanika Pojazdowa Rabka, Poland, awarded in 1998, and experience as: (1) a mechanic and trailer repair specialist working 40 hours per week for Mechanika Pojazdowa in Skawa, Poland, from November 1992 to January 1998, and (2) a mechanic and trailer repair specialist working 40 hours per week for the petitioner from an unnamed month in 2001 until the present. On the ETA-750B, Czupta states that his required one year of training in auto mechanics was earned at the same entity that he lists as the business of his prior employer. As the AAO noted, the record does not explain why Czupta listed the same entity for both his training and experience. The AAO also noted other inconsistencies with the material submitted to establish the requisite training and experience.

The record also contains a copy of a work certificate dated February 12, 1988, containing the stamp of Mechanika Pojazdowa in Skawa, Poland, signed by Jan Domagala. The work certificate states that Czupta worked as a full-time mechanic from November 1, 1992, to January 1, 1998, but provides neither Mr. Domagala's title nor any description of Czupta's duties. "Any requirements of training or experience for skilled workers, professionals, or other workers must be supported by letters from trainers or employers giving the name, address, and title of the trainer or employer, and

8

a description of the training received or the experience of the alien." 8 C.F.R. § 204.5(l)(3)(ii). In a letter dated August 20, 2009, from Josef C. Czupta, the beneficiary's brother and part owner of Quality Truck, which states that the beneficiary Czupta has been working for Quality Truck since April 2001 also does not state Czupta's work responsibilities. However, Czupta cannot use experience gained after the priority date to support the visa petition. The AAO noted that Czupta provided different dates on different documents to establish when he began working for Quality Truck. Based on these inconsistencies and deficiencies in the record, the AAO reasonably concluded that Quality Truck failed to meet its burden to establish that Czupta had the requisite training and experience for the position.

**Conclusion**

Based on the foregoing discussion, this Court finds that the AAO decision was not arbitrary and capricious on either independent basis for denying the visa petition. This is a purely legal issue without any disputed factual issues and summary judgment is appropriately granted in favor of defendants. The decision of the agency is affirmed and the complaint dismissed.

IT IS SO ORDERED.

Date:  August 11, 2014

Entered _____

United Stated District Judge